**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

**JUDY ALEMAN**                                                      **CIVIL ACTION**

**VERSUS**                                                                  **No. 26-263**

**USAA GENERAL INDEMNITY COMPANY ET AL.**          **SECTION I**

<u>**ORDER AND REASONS**</u>

Before the Court is a motion[1] to stay these proceedings and compel arbitration filed by BMS Cat of Louisiana, LLC ("BMS"). Plaintiff Judy Aleman ("plaintiff") filed a response[2] in opposition and BMS replied.[3] Defendant USAA General Indemnity Company ("USAA") did not file a response to the motion. For the following reasons, BMS's motion to stay and compel arbitration is denied.

## I.    FACTUAL BACKGROUND

The core dispute in this case is between plaintiff and USAA, her insurer. Plaintiff alleges that, on June 10, 2025, a pipe burst in her home, damaging her property.[4] USAA retained BMS "to provide water extraction and mitigation services," but according to plaintiff, BMS "did an incomplete or substandard job, leaving the dwelling to sit wet, creating conditions for the growth of mold."[5] In addition to her claims against USAA, plaintiff's amended complaint contains a claim against BMS,

---

[1] R. Doc. No. 25.
[2] R. Doc. No. 28.
[3] R. Doc. No. 29.
[4] R. Doc. No. 16 ¶ 9.
[5] *Id.* ¶ 13.

in which she "alleges that the cause of the damages sustained were the gross and wanton negligence, carelessness, and recklessness of BMS Cat and its employees."[6]

BMS filed a motion to stay the litigation and compel plaintiff to arbitrate her claims against it. BMS alleges that plaintiff agreed to arbitrate any claims against it arising out of its work on her home.[7] As an exhibit, it filed a "Residential Service Contract" purportedly signed by plaintiff's husband, Donald Aleman, which contains an arbitration clause.[8] The contract's customer signature line shows: "E-SIGNED by Donald Aleman on 2025-06-20 10:41:57 CDT."[9] However, in her response, plaintiff alleges that her husband, Donald Aleman, could not have e-signed the contract because he died on April 23, 2025, before her property was damaged on June 10 and before the residential service contract was allegedly signed on June 20.[10] She attached her husband's death certificate as an exhibit.[11] In its reply, BMS does not contest that Donald Aleman died before the contract was signed, but argues instead that plaintiff is bound by the arbitration clause because her claims against BMS are premised on the contract.[12]

---

[6] R. Doc. No. 16 ¶ 35
[7] R. Doc. No. 25-1, at 1.
[8] R. Doc. No. 25-2, at 3.
[9] *Id.* at 1.
[10] R. Doc. No. 28, at 1.
[11] *Id.* at 28-1.
[12] R. Doc. No. 29, at 1–2.

## II.    LEGAL STANDARD

### A.    Federal Arbitration Act

The Federal Arbitration Act ("FAA") "establishes 'a liberal federal policy favoring arbitration agreements.'" *Parrott v. Int'l Bancshares Corp.*, 167 F.4th 728, 734 (5th Cir. 2026) (quoting *Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983)). Section 2 of the FAA provides that:

> A written provision in . . . a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract or as otherwise provided in chapter 4.

9 U.S.C. § 2. The Act creates "a strong presumption in favor of arbitration and a party seeking to invalidate an arbitration agreement bears the burden of establishing its invalidity." *Parrott*, 167 F.4th at 735 (quoting *Carter v. Countrywide Credit Indus., Inc.*, 362 F.3d 294, 297 (5th Cir. 2004)).

In the Fifth Circuit, "[e]nforcement of an arbitration agreement involves two analytical steps. The first is contract formation—whether the parties entered into any arbitration agreement at all. The second involves contract interpretation to determine whether this claim is covered by the arbitration agreement." *Parrott*, 167 F.4th at 735 (emphasis omitted) (quoting *Kubala v. Supreme Prod. Servs., Inc.*, 830 F.3d 199, 201 (5th Cir. 2016)).

In the first step of the FAA analysis, courts in this circuit "distinguish between 'validity' or 'enforceability' challenges and 'formation' or 'existence' challenges" to the arbitration agreement. *Arnold v. Homeaway, Inc.*, 890 F.3d 546, 550 (5th Cir. 2018).

3

Challenges to the validity or enforceability of an arbitration agreement may be submitted to an arbitrator, but "[w]here the 'very existence of a contract' containing the relevant arbitration agreement is called into question, the federal courts have authority and responsibility to decide the matter." *Id.* (quoting *Banc One Acceptance Corp. v. Hill*, 367 F.3d 426, 429 (5th Cir. 2004)). "[T]he Supreme Court has suggested that the category of arguments that question the very existence of an agreement include 'whether the alleged obligor ever signed the contract, whether the signor lacked authority to commit the alleged principal, and whether the signor lacked the mental capacity to assent.'" *Id.* (quoting *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 444 n.1 (2006)).

### B.    Louisiana Contract Law

"Whether the parties entered into a valid contract turns on state contract law." *Parrott*, 167 F.4th at 735. The parties do not dispute that Louisiana law governs the contract at issue in this case.[13] Pursuant to Louisiana law, "[t]he party seeking to enforce an arbitration provision has the burden of showing the existence of a valid contract to arbitrate." *Duhon v. Activelaf, LLC*, 411 So.3d 601, 612 (La. 2016); *cf. Huckaba v. Ref-Chem, L.P.*, 892 F.3d 686, 688 (5th Cir. 2018) (applying Texas law to determine which party has the burden of proving the existence of an arbitration agreement).

---

[13] R. Doc. No. 25-1, at 5; R. Doc. No. 28, at 2.

Pursuant to Louisiana law, the "elements of a valid contract are: (1) the parties must possess the capacity to contract; (2) the parties' mutual consent must be freely given; (3) there must be a certain object for the contract; and (4) the contract must have a lawful purpose." *Hick's Auto Sales, LLC v. Go Auto Ins. Co.*, 429 So.3d 880, 884 (La. Ct. App. 2d Cir. 2026) (citing La. Civ. Code arts. 1918, 1927, 1966, 1971). The deceased do not have the capacity to form contracts. *See* La. Civ. Code art. 25 ("Natural personality . . . terminates at death.").

"Written acts are of two kinds, authentic acts and acts under private signature." *Rainey v. Entergy Gulf States, Inc.*, 35 So.3d 215, 225 (La. 2010). "An act under private signature need not be written by the parties, but must be signed by them." *Id.* (quoting La. Civ. Code art. 1837). If a party acknowledges its signature, the act "is regarded prima facie as the true and genuine act of a party executing it." *Origin Bank v. JPS Aero, L.L.C.*, 383 So.3d 1125, 1132 (La. Ct. App. 2d Cir. 2024) (citing La. Civ. Code art. 1836). An act under private signature is also valid if "only one party has signed an agreement and the other party has availed himself of the agreement or taken actions evidencing his acceptance thereof." *Harp v. Succession of Bryan*, 313 So.3d 284, 294 (La. Ct. App. 1st Cir. 2020) (citing La. Civ. Code art. 1837, 1984 Revision Comment (b)); *see also GM/GS Restoration Tech. LLC v. Whitestone Constr. Grp., LLC*, No. 23-2044, 2024 WL 5668918, at *8 (E.D. La. Feb. 5, 2024) (Vitter, J.).

### III.    ANALYSIS

**A.    Existence of an Arbitration Agreement**

Plaintiff argues that BMS never entered into an arbitration agreement because the alleged counterparty, her husband, was dead at the time the contract was signed.[14] This is a challenge to "the 'very existence of a contract' containing the relevant arbitration agreement" and is therefore a matter for this Court to resolve. *Arnold*, 890 F.3d at 550 (quoting *Banc One Acceptance Corp.*, 367 F.3d at 429); *see also Parrott*, 167 F.4th at 735 (quoting *Lamps Plus, Inc. v. Varela*, 587 U.S. 176, 184 (2019) ("Consent is essential under the FAA because arbitrators wield only the authority they are given.").

BMS has not established that it entered into an arbitration agreement with either plaintiff or her husband. Pursuant to Louisiana law, an agreement under private signature, like the contract produced by BMS, is "the true and genuine act of a party executing it when his signature has been acknowledged," *Origin Bank*, 383 So.3d at 1132, or he "has availed himself of the agreement or taken actions evidencing his acceptance thereof." *Harp*, 313 So.3d at 294.

First, the signature on the contract is not plaintiff's and it cannot be her husband's because he died almost two months before the contract was signed. BMS implies that the contract was signed by someone else on Donald Aleman's behalf, but it produces no evidence to substantiate this claim.[15]

---

[14] R. Doc. No. 28, at 2–3.
[15] R. Doc. No. 29, at 6.

Second, BMS has failed to allege that plaintiff either availed herself of the agreement or took actions that evidence her acceptance of it. There is no evidence that plaintiff even knew of the agreement before BMS filed its motion. She could not have availed herself of a contract that she had no knowledge of. *See* La. Civ. Code art. 1927 ("A contract is formed by the consent of the parties established through offer and acceptance."). In addition, BMS alleges no actions taken by plaintiff evidencing her acceptance of the contract except for the filing of this lawsuit, which it asserts is premised on the existence of the contract.[16] However, plaintiff's amended complaint nowhere mentions the contract with BMS, and it contains a claim against BMS for tort, not breach of contract.

## B.    Estoppel

BMS invokes three estoppel doctrines to compel plaintiff to arbitrate her dispute in the absence of an arbitration agreement: judicial estoppel, equitable estoppel, and direct benefits estoppel.[17] But none of these estoppel doctrines apply to the present case.

The FAA permits "'background principles' of state contract law," including estoppel, to "allow a contract to be enforced by or against nonparties to the contract." *Brittania-U Nigeria, Ltd. v. Chevron USA, Inc.*, 866 F.3d 709, 715 (5th Cir. 2017) (quoting *Crawford Professional Drugs, Inc. v. CVS Caremark Corp.*, 748 F.3d 249, 257 (5th Cir. 2014)). Louisiana contract law recognizes estoppel, but the Louisiana

---

[16] *Id.* at 2–3.

[17] *Id.* at 3.

Supreme Court has warned that it "is not favored in our state's Civil Law System; rather, it is a doctrine of last resort." *Police Jury of Calcasieu Parish v. Indian Harbor Ins. Co.*, 395 So.3d 717, 728–29 (La. 2024).

1.    *Judicial Estoppel*

The doctrine of judicial estoppel allows a court to bar a litigant from arguing inconsistent legal positions. *Thomas v. Economy Premier Assur. Co.*, 196 So.3d 7, 11 (La. Ct. App. 2d Cir. 2016); *see also Keathley v. Buddy Ayers Constr., Inc.*, 146 S.Ct. 1532, 1538–39 (2026). It has three elements: "(1) the party against whom judicial estoppel is sought has asserted a legal position that is plainly inconsistent with a prior position; (2) a court accepted the prior position; and (3) the party did not act inadvertently." *Gonsoulin v. Broussard*, 353 So.3d 1044, 1047 (La. Ct. App. 3d Cir. 2022) (quoting *Hawkins v. Meridian Res. & Exploration. LLC*, 236 So.3d 610, 618 (La. Ct. App. 1st Cir. 2017)).

BMS argues that plaintiff's challenge to the existence of her contract is inconsistent with the allegations in her complaint because her claims are premised on the existence of the contract.[18] But she has never taken the legal position that the contract was valid. *See Guilbeau Marine, Inc. v. Ledet*, 375 So.3d 977, 985 (La. Ct. App. 1st Cir. 2023) (declining to apply judicial estoppel where "plaintiffs have not asserted a legal position that is plainly inconsistent with a prior position"). As previously stated, plaintiff's claims against BMS are for tort, not for breach of

---

[18] *Id.* at 2.

contract,[19] which is consistent with her argument that the contract never existed. Also, even if plaintiff had taken an inconsistent position, BMS has provided no evidence that any court ever accepted it. *See Thomas*, 196 So.3d at 11 ("Absent judicial acceptance of the inconsistent position, application of the rule is unwarranted because no risk of inconsistent results exists."). Therefore, judicial estoppel does not bar her from challenging the validity of the contract.

2.     *Equitable Estoppel*

Equitable estoppel "prevent[s] a signatory from avoiding arbitration with a non[-]signatory when the issues the non[-]signatory is seeking to resolve in arbitration are intertwined with the agreement that the estopped party has signed." *Traders' Mart, Inc. v. AOS, Inc.*, 268 So.3d 420, 428 (La. Ct. App. 2d Cir. 2019); *see also Chubb Capital I Ltd. v. New Orleans City*, 732 F. Supp. 3d 558, 570 (E.D. La. 2024) (Milazzo, J.). But, it does not prevent "a non[-]signatory from avoiding arbitration regardless of how closely affiliated that non[-]signatory is with another signing party." *Traders' Mart*, 268 So.3d at 428. Because plaintiff is a non-signatory, equitable estoppel cannot compel her to arbitrate.

3.     *Direct Benefits Estoppel*

"Direct benefits estoppel prevents a non-signatory from escaping the effects of an arbitration clause when he knowingly exploits and receives a benefit from the agreement containing the arbitration clause." *Donelon v. Shilling*, 340 So.3d 786,

---

[19] R. Doc. No. 16 ¶ 35.

793 n.9 (La. 2020). The non-signatory must "have had actual knowledge of the contract containing the arbitration clause." *Traders' Mart*, 268 So.3d at 428. The non-signatory must also "embrace" the contract either: "(1) by knowingly seeking and obtaining 'direct benefits' from that contract; or (2) by seeking to enforce the terms of that contract or asserting claims that must be determined by reference to that contract." *Id.* Direct benefits estoppel is inapplicable here because there was no underlying agreement. If the contract did not exist, then plaintiff could not have had "actual knowledge" of it. *Id.*

## IV.    CONCLUSION

**IT IS ORDERED** that BMS's motion to stay and compel arbitration is **DENIED**.

New Orleans, Louisiana, July 27, 2026.

_____
**LANCE M. AFRICK**
**UNITED STATES DISTRICT JUDGE**